UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **24-60018-CR-SMITH/AUGUSTIN-BIRCH**

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

FILED BY _____MP_____ D.C.
Jan 30, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

vs.

WAYNE ALEXANDER GOPIE,

    Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

### The Economic Injury Disaster Loan Program

2. The United States Small Business Administration ("SBA") was an agency of the executive branch of the Government of the United States. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. The CARES Act authorized and provided funding to the SBA to provide Economic Injury Disaster Loans ("EIDLs") to eligible small businesses, including sole proprietorships and independent contractors, experiencing substantial financial disruptions due to the COVID-19

pandemic to allow them to meet financial obligations and operating expenses that could have been met had the disaster not occurred.

4. In order to obtain an EIDL, a qualifying for-profit business was required to submit an EIDL application to the SBA and provide information about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month periods preceding January 31, 2020 or January 31, 2021. The applicant also was required to certify under penalty of perjury that all the information in the application was true and correct.

5. EIDL applications were submitted directly to and processed by the SBA. The amount of the loan approved was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the United States government to the applicant's bank account.

### The Paycheck Protection Program

6. The CARES Act also provided relief by authorizing and funding forgivable loans to small businesses for job retention and certain other business expenses, through a program referred to as the Paycheck Protection Program ("PPP").

7. In order to obtain a PPP loan, a qualifying sole proprietorship submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the sole proprietorship (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483-C), a sole proprietorship without employees (through its authorized representative) was required to provide, among other things, the total amount of gross income reported on its 2019 or 2020 IRS Form 1040, Schedule C, line 7 ("Schedule C"). This figure was used to calculate the amount of money the sole proprietorship was eligible to receive under the PPP.

8. A PPP loan application was processed by a participating lender. If a PPP application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

9. PPP loan proceeds were required to be used by the business on certain permissible business expenses, such as payroll costs, interests on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### The Defendant and Relevant Entities

10. **WAYNE ALEXANDER GOPIE** was a resident of Broward County, Florida.

11. AllStar Logistics and Transport LLC ("ALT LLC") was a limited liability company that was registered with the Florida Department of State (Divisions of Corporations) on or about May 19, 2020. **WAYNE ALEXANDER GOPIE** was the listed manager and registered agent of ALT LLC.

12. Lender 1, based in California, was an approved SBA lender of PPP loans.

13. Bank 1 was a financial institution based in New York, New York, and had branches throughout the State of Florida, including in Broward County, Florida.

14. **WAYNE ALEXANDER GOPIE** registered a business account for ALT LLC at Bank 1 (the "ALT Bank 1 Account").

## Wire Fraud
### (18 U.S.C. § 1343)

15. From in or around May 2020, through in or around June 2021, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**WAYNE ALEXANDER GOPIE,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

### PURPOSE OF THE SCHEME AND ARTIFICE

16. It was a purpose of the scheme and artifice for the defendant to unlawfully enrich himself by submitting and causing the submission, via interstate wire communication, of false and fraudulent applications for PPP and EIDL loans made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic.

### THE MANNER AND MEANS

The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

#### *Fraudulent EIDLs*

17. On or about July 6, 2020, **WAYNE ALEXANDER GOPIE** submitted and caused to be submitted a false and fraudulent EIDL application on behalf of ALT LLC, seeking an EIDL advance disbursement of approximately $10,000, and an EIDL of approximately $135,000. In that application, **GOPIE** falsely and fraudulently certified, among other things, that the company's

4

gross revenues for the twelve months prior to the date of the disaster were $610,000 and that it had ten (10) employees.

18. Based on the false and fraudulent representations made in the EIDL application and accompanying documents, on July 9, 2020, the SBA deposited approximately $10,000 in EIDL "advance" funds, and then on July 28, 2020, deposited approximately $135,000 in loan proceeds into a bank account controlled by **WAYNE ALEXANDER GOPIE** at Bank 1 (ending in 0514).

19. On or about July 7, 2020, **WAYNE ALEXANDER GOPIE** submitted and caused to be submitted a second false and fraudulent EIDL application on behalf of ALT LLC, seeking approximately $134,000. In this second application, **GOPIE** falsely and fraudulently certified, among other things, that the company's gross revenues for the twelve months prior to the date of the disaster were $580,000. The SBA rejected this EIDL application.

20. On or about February 8, 2021, **WAYNE ALEXANDER GOPIE** submitted and caused to be submitted a third false and fraudulent EIDL application, this time in his own name, as a sole proprietor, seeking approximately $150,000. In this third application, **GOPIE** falsely and fraudulently certified, among other things, that his gross revenues for the twelve months prior to the date of the disaster were $550,000. The SBA rejected this EIDL application.

*Fraudulent PPP Loan*

21. On or about May 30, 2021, **WAYNE ALEXANDER GOPIE** submitted and caused to be submitted a false and fraudulent PPP loan application through Lender 1, on behalf of ALT LLC, seeking approximately $20,571. In this application, **GOPIE** falsely and fraudulently certified, among other things, that the company's gross income for the 2020 tax year was $98,745.

22. Based on the false and fraudulent representations made in the PPP loan application and accompanying documents, Lender 1 deposited approximately $20,571 into a bank account controlled by **WAYNE ALEXANDER GOPIE** at Bank 1 (ending in 0514).

## USE OF WIRES

23. On or about July 28, 2020, in the Southern District of Florida, and elsewhere, **WAYNE ALEXANDER GOPIE**, for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted, directly and indirectly, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, that is, a wire transfer of fraudulently obtained EIDL funds in the approximate amount of $135,000 from the SBA to the ALT Bank 1 Account owned and controlled by **WAYNE ALEXANDER GOPIE**, causing a wire transmission from outside the State of Florida to the Southern District of Florida, in violation of Title 18, United States Code, Sections 1343 and 2

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **WAYNE ALEXANDER GOPIE**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States, any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. The property subject to forfeiture as a result of the alleged offense includes a sum that represents the total amount of funds involved in or derived from the alleged offense and may be sought as a forfeiture money judgment.

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 21, United States Code, Section 2461(c).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

JUAN ANTONIO GONZALEZ
ASSISTANT UNITED STATES ATTORNEY

EDUARDO GARDEA, JR.
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

CASE NO.: 24-60018-SMITH/AUGUSTIN-BIRCH

v.

WAYNE ALEXANDER GOPIE,

_____ /
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☒ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I ☒ 0 to 5 days
   - II ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV ☐ 21 to 60 days
   - V ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Cohn   Case No. 07-CR-60159-COHN
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____[signature]_____
for JUAN ANTONIO GONZALEZ
Assistant United States Attorney
FL Bar No.   897388

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  WAYNE ALEXANDER GOPIE

**Case No:**

Count #: 1

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** Twenty (20) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:**  $250,000 or Twice the Gross Gain or Gross Loss Resulting from Offense

*Refers only to possible term of incarceration, supervised release, and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.